FILED
CLERK, U.S. DISTRICT COURT

MAR 3 0 2020

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

Jose Velez
3936 S Semoran Blvd #317
Orlando, FL 32822
Tel.: (407) 456-4880
Fax Number: n/a
Email:  jvelez2@protonmail.com
Plaintiff In Propria Persona

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION – SANTA ANA

Jose Velez,

        Plaintiff

    vs.

2Bella, Inc., et al

        Defendant(s)

Case No.: 8:18-cv-00550-JLS-DFM

**MOTION FINAL DEFAULT JUDGMENT**

Plaintiff, JOSE VELEZ hereby states and alleges as follows:

Plaintiff hereby move this Court for entry of a default judgment as to Defendant 2Bella, Inc. upon the complaint filed and served upon defendant, in accordance with the provisions of Rule 55(b)(2), Federal Rules of Civil Procedure, and in support thereof shows the Court the following:

On August 27, 2018, Velez initiated this action against Defendants. (First Am. Compl. ("FAC") ¶ 1, ECF No. 17.) There are two claims that arise from Velez's visit to

Defendant's property on March 31, 2018: (1) Violations of Title III of the Americans with Disabilities Act ("ADA"), claiming, a) that all portions of the counter are higher than 36 inches above the floor. Possible readily achievable solution: lowering a section of the counter and that no portion of the counter is at least 36 inches long in violation of 2010 ADA Standards for Accessible Design § 904.4.1 (ADAAG); b) that there are aisles and pathways to good and services that are obstructed by a vertical rise. ADAAG §403.5.1; c) that aisles and pathways to goods and services but the space between movable display racks do not provide a clearance of least 36 inches wide in many areas in violation of ADAAG § 403.5; and that the Defendant should reconfigure the movable racks as in Lieber v. Macy's West, Inc., 80 F. Supp. 2d 1065, 1077 (N.D. Cal. 1999) (holding that spacing of movable display racks is governed by the more general "readily achievable" standard of the ADA); (2) violation of the Unruh Civil Rights Act ("Unruh") premised on the ADA violations. (FAC ¶¶ 1, 60-65.)

On January 19, 2020, under 28 U.S.C. § 636, the Court reviewed the pleadings and all the records and files herein, along with the Report and Recommendation of the assigned United States Magistrate Judge. The Court engaged in a de novo review where objections have been made. The Court accepted the findings, conclusions, and recommendations of the United States Magistrate Judge. Consequently, the Court ordered that default judgment be entered against Defendants first and second causes of action alleged in the FAC.

Plaintiff hereby incorporates by reference the accompanying declaration in support of the requested relief.

**WHEREFORE,** plaintiff prays that this Court enter a default judgment against defendant, and that defendant be enjoined a restrained from violating the ADA and other remedies under the Unruh Act, as provided and fully explained in the proposed Final Judgment filed contemporaneously with this motion.

JOSE VELEZ
PLAINTIFF
IN PROPRIA PERSONA

## CERTFICATE OF SERVICE

I, Jose Velez, hereby certify, under penalty of perjury, 28 U.S.C. § 1746, that on March 19, 2020, a true and exact copy of this document was sent to:

Law Offices of Albert Chang

1225 W 190th Street, Suite 420

Gardena, CA 90248

JOSE VELEZ
PLAINTIFF
IN PROPRIA PERSONA

## UNSWORN DECLARATION UNDER PENALTY OF PERJURY

I, Jose Velez, under penalty of perjury declare:

1. I file this declaration in support of my motion for final default judgment, which was filed in compliance with order. The deadline for filing this document was March 9, 2018. However, I was unable to do so because at the time I was experiencing flu-like symptoms and was self-isolated given the Codvid-19 outbreak. Because of this, I hereby request the Court to accept this declaration with supporting documentation and the motion for entry of final judgment filed contemporaneously with this declaration. The motion for entry of final default judgment is also based on the content of the final proposed judgment filed with the court.

2. I am the Plaintiff in Civil No. 8:18-cv-00550-JLS-DFM  before the U.S. District Court for the Central District of California.  A copy of the amended complaint is attached to this motion. **EXHIBIT I** (First Amended Complaint dated August 27, 2018). The allegations of the complaint are true and correct.

3. My body mass index (BMI) is approximately 44.4.

4. The additional weight on my frame makes it substantially more difficult, beyond the normal range, to engage in the major life activities of walking, standing, bending, kneeling, stooping, lifting, carrying, maintaining strength and mobility, maintain balance. The additional weigh also causes me abnormal gait patterns,

increased incidence of muscle weakness and pain. Because of this, I own and frequently use a cane. Because of the extent of my mobility-related limitations, I also rent a motorized scooter when I know that I will be unable to have a seat for a prolonged time, i.e. visiting a shopping center or a theme park.

5.  I visited the Defendant's store at 260 Forest Avenue Laguna Beach, CA 92651 on store on **March 31, 2018**.  The following image is a purchase receipt I obtained after paying $72.36 at Defendant's store:



**2bella Laguna Beach (2B4)**
Laguna Seas Mall
260 Forest Avenue
Laguna Beach, CA 92651 USA
949-497-4777
949-497-4777

**Sales Receipt**
03/31/2018 01 45 45 PM

Ticket  220000325783
Register  Register1
Employee  Shelby
Customer  Free Gift

| Item | # | Price |
|------|---|-------|
| JK038STM82 02 8079JS-18 Cargo Jacket Camel | 1 | $38 00 |
| JA048CAT83 07 06T CS34 Jacket Gray | 1 | $48 00 |
| BR004BEN83 22 06 br-600-dz Bracelet Gift Asst. gift | 1 | $4 00 |

| | |
|---|---|
| Subtotal | $90 00 |
| Discounts | -$23 00 |
| Tax ($67 00 @ 8%) | $5 36 |
| Total Tax | $5 36 |
| **Total** | **$72.36** |

**PAYMENTS**

Credit Card
Card Num  8584
Type  Debit/Visa        $72 36
Cardholder  VELEZ

6. I visited the 2Bella store at 579 Bridgeway Sausalito, CA 94965 on **June 29, 2018.** The following image is a purchase receipt I obtained after paying $93.74 at Defendant's store.

**2bella Sausalito (2B1)**
579 Bridgeway Blvd
Sausalito, CA 94965
415 331 0579
415 332 2847

**Sales Receipt**
06/29/2018 04:53:21 PM

Ticket: 220000336671
Register: Register 1
Employee: Jenna

| Item | # | Price |
|---|---|---|
| SK038APJ06-180518-A06006--Denim Skt Drk Wsh | 1 | $38.00 |
| BD016GEI7N 13 RT50401 Ribbed Scoop NK Body Suit Burgandy | 1 | $16.00 |
| BI32AE04 SS3666 Swimsuit Asst | 1 | $32.00 |
| Subtotal | | $86.00 |
| Tax ($86.00 @ 9%) | | $7.74 |
| Total Tax | | $7.74 |
| **Total** | | **$93.74** |

**PAYMENTS**

Credit Card
Card Num: 8584
Type: Debit/VISA
Entry: SWIPE          $58.86
Approval: 017881
ID: 1151897747

Credit Card
Card Num: 8584
Type: Debit/VISA
Entry: SWIPE          $34.88
Approval: 075721
ID: 1151901131

Thank you for shopping at 2bella!

Give us a shoutout on Yelp :)
yelp.com/biz/2bella-sausalito

Or visit our website at www.2bella.com



7. These purchase receipts were provided to opposing party counsel to corroborate that Plaintiff was a bona fide patron at the time of the visits.

8. During my two visits to the stores, I found that all portions of the counter were higher than 36 inches above the floor and that a possible readily achievable solution was lowering a section of the counter. I also found that no portion of the counter is at least 36 inches long and that a possible readily achievable solution was lengthening a section of the counter. I also found that the aisles and pathways to good and services were obstructed by vertical rise and that a possible readily achievable solution is the installation of a ramp or, alternatively, a removable ramp. Finally, I found that there are aisles and pathways to goods and services and the space between movable display racks is not at least 36 inches wide in many areas and he notes that there much room for improvement that is readily achievable by simply reconfiguring the movable racks. While these violations did not cause an outright denial of access, these violations made it unnecessarily difficult to shop around given my mobility related limitations.

9. In addition to my claim for injunctive relief under the ADA, I claim four thousand dollars ($4,000) under the Unruh Act related to the visit to the 2Bella store at 579 Bridgeway Sausalito, CA 94965 on **June 29, 2018.**

10. In addition to my claim for injunctive relief under the ADA, I claim four

thousand dollars ($4,000) under the Unruh Act related to the visit to the 2Bella

store at 260 Forest Avenue Laguna Beach, CA 92651 on store on **March 31,**

**2018**.

11. I also request the Court to impose on 2Bella, Inc. costs in the amount of four

hundred dollars $400.00 as a reimbursement of the filing fee to this action.

12. I believe that 2Bella, Inc. has control over the 2Bella Boutique stores because on

July 20, 2018, counsel for 2Bella represented via email that 2Bella was in the

process of "fixing" the alleged ADA issues. **EXHIBIT II** to this declaration

(email from Mariam Alami Saqubi, Esq. to Jose Velez on July 20, 2018).

I declare that the foregoing is true to the best of my knowledge.

Dated: March 19, 2020.

**JOSE VELEZ**

FILED

Jose Velez
3936 S Semoran Blvd #317
Orlando, FL 32822
Tel.: n/a
Fax Number: n/a
Email:  jvelez2@protonmail.com
Plaintiff In Propria Persona

2018 AUG 27  PM 3: 04

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

# EXHIBIT I

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

Jose Velez,

        Plaintiff,

        vs.

2Bella, Inc., Carola Summers, Does 1-10, inclusive.

        Defendant(s)

Case No.: SACV18-00550 JLS (DFMX)

AMENDED COMPLAINT AS A MATTER OF COURSE (FED. R.CIV. P. 15) FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff, JOSE VELEZ hereby complains and alleges as follows:

### NATURE OF THE ACTION

1.      This is an action seeking to remedy unlawful discrimination by the Defendants against the Plaintiff in the Defendants' place of public accommodation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. (the "ADA") and the Unruh Civil Rights Act, Civil Code § 51, et seq. (the "Unruh Act").

2.      This lawsuit is necessary because the Defendants failed to remove accessibility barriers and because the Defendants continue to maintain barriers in violation of the ADA and the Unruh Act as described herein.

3.      Plaintiff personally encountered the barriers in violation of the ADA and the Unruh Act described herein and took photos of the barriers with his iPhone.

The metadata of the digital images will confirm the date and geolocation of the images, where the barriers are located. Plaintiff personally paid with his credit card at the defendants' facility and his credit card statement, as well as defendants' bank statement, will confirm this information. A purchase receipt is available for inspection.

## PARTIES

4.    Plaintiff, Jose Velez, is a person with mobility-related limitations because morbid obesity and a binge-eating disorder. For example, his additional weight on his frame makes it more difficult to breathe, walk, stand, and bend; while his binge-eating disorder affects his ability to concentrate and think. Plaintiff is therefore a "disabled" person within the meaning of the ADA and California Government Code § 12926.

5.    The business establishments at issue in this complaint discriminated against Plaintiff and prevented Plaintiff from enjoying full and equal access thereto due to the existence of unlawful architectural barriers that violate the ADA as described in more detail herein.

6.    Defendant, 2Bella, Inc., doing business as 2Bella Boutique, owns, operates, or leases the real property located at 260 Forest Ave. Laguna Beach, CA 9265. This property is a facility open to the general public, a public accommodation, and a business establishment insofar as it provides goods and/or services to the general public.

7.    Defendant, 2Bella, Inc., doing business as 2Bella Boutique, owns, operates, or leases the real property located at 579 Bridgeway Sausalito, CA 94965. This property is a facility open to the general public, a public accommodation, and a business establishment insofar as it provides goods and/or services to the general public.

8.    Defendant, 2Bella, Inc., doing business as 2Bella Boutique, owns, operates, or leases the real property located at 651 Paseo Nuevo #317 Santa Barbara,

CA 93101. This property is a facility open to the general public, a public accommodation, and a business establishment insofar as it provides goods and/or services to the general public.

9.  Defendant, 2Bella, Inc., doing business as 2Bella Boutique, owns, operates, or leases the real property located at Westfield Fashion Square 14006 Riverside Drive #87. This property is a facility open to the general public, a public accommodation, and a business establishment insofar as it provides goods and/or services to the general public.

10. Defendant, 2Bella, Inc., doing business as 2Bella Boutique, owns, operates, or leases the real property located at Westfield Valencia Town Center 24201 West Valencia Blvd #3518 Valencia, CA 91355. This property is a facility open to the general public, a public accommodation, and a business establishment insofar as it provides goods and/or services to the general public.

11. Defendant, 2Bella, Inc., doing business as 2Bella Boutique, owns, operates, or leases real property located at 2500 East 2nd Street Reno, NV 89502. This property is a facility open to the general public, a public accommodation, and a business establishment insofar as it provides goods and/or services to the general public.

12. The properties described at paragraph 6, 7, 8, 9, 10, and 11 are collectively referred to as the "Subject Property," as they share common violations to the ADA unless otherwise indicated. The Subject Property is a facility open to the general public, a public accommodation, and a business establishment insofar as it provides goods and/or services to the general public.

13. Defendant, Carola Summers, doing business as 2Bella Boutique, owns, operates, or leases the Subject Property.

14. Defendant Does 1 through 10, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to the Plaintiff. When

their true names and capacities are ascertained, Plaintiff will amend this complaint by inserting their true names and capacities herein. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by those Defendants.

15.    Defendant, 2Bella, Inc., Carola Summers, and Does 1-10, inclusive, own and operate the following website: https://www.2bella.com.

## JURISDICTION AND VENUE

16.    This Court has jurisdiction over the subject matter of this action pursuant 28 U.S.C. §§ 1331 and 1343(a)(3) and (a)(4) for violations of the ADA.

17.    This Court has supplemental jurisdiction over the state law claims alleged herein under the Unruh Act because the state law claim is an attendant and related cause of action that arises from the same nucleus of operative facts and arising out of the same transaction or occurrence as the federal law claims set forth herein.

18.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) based on the fact that the real property that is the subject of this action is located in this district and the Plaintiff's causes of action arose in this district.

## STATEMENT OF FACTS

19.    The ADA establishes different standards depending on when the facility was constructed and whether the facility has been altered since January 26, 1992. 28 C.F.R. §§ 36.401, 36.402. Existing facilities are required to remove barriers to access for persons with disabilities where removal is "readily achievable." 42 U.S.C. § 12182(b)(2) (A)(iv); 28 C.F.R. § 36.304. Facilities designed and constructed for first occupancy after January 26, 1993, must be accessible to persons with disabilities unless the entity can demonstrate that it is "structurally impractical." 42 U.S.C. § 12183(a).

Finally, alterations after January 26, 1992 must be made to ensure that, to the "maximum extent feasible," the altered portions of the facility are accessible. 28 C.F.R. § 36.402(a)(1).

20.    The original ADA design Standards were first published in 1991 and are set forth at 28 C.F.R. Part 36, Appendix A (the "1991 Standards"). The new ADA design Standards were first published in 2010 and are set forth at 28 C.F.R. Part 36, Subpart D (the "2010 Standards"). Both Standards are available at www.ada.gov. New construction and alterations commenced between September 15, 2010, and March 15, 2012, must comply with either the 1991 Standards or the 2010 Standards. All new construction and alterations commenced on or after March 15, 2012 must comply with the 2010 Standards.

21.    Plaintiff alleges on information and belief, the Subject Property was designed and constructed for first occupancy after January 26, 1993. *See* 28 C.F.R. § 36.401.

22.    Plaintiff alleges on information and belief, the Subject Property is located in a facility that was constructed after January 26, 1993. *See* 28 C.F.R. § 36.401.

23.    On information and belief, the Subject Property undergone alterations after January 26, 1992. The term "alterations" includes, but is not limited to, remodeling, renovation, rehabilitation, historic restoration, changes or rearrangement in structural parts or elements, and changes or rearrangement in the plan configuration of walls and full height partitions. Normal maintenance, re-roofing, painting or wallpapering, asbestos removal, or changes to mechanical or electrical systems are not alterations unless they affect the usability of the building or facility. *See* 28 C.F.R. § 36.402(b).

24.    Alternatively, if the Subject Property was *not* designed and constructed for first occupancy after January 26, 1993, the Subject Property is an existing

facility required to remove barriers to access for persons with disabilities where removal is "readily achievable." 42 U.S.C. § 12182(b)(2). The ADA provides that, when assessing whether barrier removal is "readily achievable," the factors to consider include the "resources" of the facility, 42 U.S.C. § 12181(9)(b), which includes "the overall financial resources of any parent corporation or entity," 28 C.F.R. § 36.104.

25.    Service counters, seating areas and restrooms are among the facilities, privileges and advantages offered by the Defendants to patrons of the Subject Property.

26.    The Subject Property is not fully accessible to Plaintiff or similarly situated persons with mobility disabilities to the barriers at the Subject Property.

27.    On information and belief, on March 31, 2018, and continuously from that time to the present, and currently, the property located at 260 Forest Avenue Laguna Beach, CA 92651 was not in compliance with the ADA:

    i.   Sales & service counter (2010 ADA Standards for Accessible Design – 904.4.1): All portions of the counter are higher than 36 inches above the floor. Possible readily achievable solution: lowering a section of the counter.

    ii.  Sales & service counter (2010 ADA Standards for Accessible Design – 904.4.1): No portion of the counter is at least 36 inches long. Possible readily achievable solution: lengthening a section of the counter.

    iii. There are aisles and pathways to good and services that are obstructed by vertical rise. (2010 ADA Standards for Accessible Design – 403.5.1). A possible readily achievable solution may be the installation of a ramp or, alternatively, a removable ramp.

    iv.  Aisles between movable racks where merchandise is placed (2010 ADA Standards for Accessible Design – 403.5.1). There are aisles and

pathways to goods and services and the space between movable display racks is not at least 36 inches wide in many areas, in violation of Section 403.5. There much room for improvement that is readily achievable by simply reconfiguring the movable objects. See <u>Lieber v. Macy's West,</u> Inc., 80 F. Supp. 2d 1065, 1077 (N.D. Cal. 1999) (holding that spacing of movable display racks is governed by the more general "readily achievable" standard of the ADA.

28.  On information and belief, on June 29, 2018, and continuously from that time to the present, and currently, the property located at 579 Bridgeway Sausalito, CA 94965 not in compliance with the ADA:

    i.  Sales & service counter (2010 ADA Standards for Accessible Design – 904.4.1): All portions of the counter are higher than 36 inches above the floor. Possible readily achievable solution: lowering a section of the counter.

    ii.  Sales & service counter (2010 ADA Standards for Accessible Design – 904.4.1): No portion of the counter is at least 36 inches long. Possible readily achievable solution: lengthening a section of the counter.

    iii.  Aisles between movable racks where merchandise is placed (2010 ADA Standards for Accessible Design – 403.5.1). There are aisles and pathways to goods and services and the space between movable display racks is not at least 36 inches wide in many areas, in violation of Section 403.5. There much room for improvement that is readily achievable by simply reconfiguring the movable objects. See <u>Lieber v. Macy's West,</u> Inc., 80 F. Supp. 2d 1065, 1077 (N.D. Cal. 1999) (holding that spacing of movable display racks is governed by the more general "readily achievable" standard of the ADA.

29.    On information and belief, the property located at 651 Paseo Nuevo #317 Santa Barbara, CA 93101 is currently not in compliance with the ADA:

    i.    Sales & service counter (2010 ADA Standards for Accessible Design – 904.4.1): All portions of the counter are higher than 36 inches above the floor. Possible readily achievable solution: lowering a section of the counter.

    ii.    Aisles between movable racks where merchandise is placed (2010 ADA Standards for Accessible Design – 403.5.1). There are aisles and pathways to goods and services and the space between movable display racks is not at least 36 inches wide in many areas, in violation of Section 403.5. There much room for improvement that is readily achievable by simply reconfiguring the movable objects. See Lieber v. Macy's West, Inc., 80 F. Supp. 2d 1065, 1077 (N.D. Cal. 1999) (holding that spacing of movable display racks is governed by the more general "readily achievable" standard of the ADA.

30.    On information and belief, the property located at 2500 East 2nd Street Reno, NV 89502 is currently not in compliance with the ADA:

    i.    Sales & service counter (2010 ADA Standards for Accessible Design – 904.4.1): All portions of the counter are higher than 36 inches above the floor. Possible readily achievable solution: lowering a section of the counter.

    ii.    Aisles between movable racks where merchandise is placed (2010 ADA Standards for Accessible Design – 403.5.1). There are aisles and pathways to goods and services and the space between movable display racks is not at least 36 inches wide in many areas, in violation of Section 403.5. There much room for improvement that is readily achievable by simply reconfiguring the movable objects. See Lieber v. Macy's West, Inc., 80 F. Supp. 2d 1065, 1077 (N.D. Cal. 1999)

(holding that spacing of movable display racks is governed by the
more general "readily achievable" standard of the ADA.

31. On information and belief, the property located at Westfield Fashion Square
14006 Riverside Drive #87, Sherman Oaks, CA 91423 is currently not in
compliance with the ADA:

    i. Sales & service counter (2010 ADA Standards for Accessible Design
       – 904.4.1): All portions of the counter are higher than 36 inches above
       the floor. Possible readily achievable solution: lowering a section of
       the counter.

    ii. Aisles between movable racks where merchandise is placed (2010
       ADA Standards for Accessible Design – 403.5.1). There are aisles and
       pathways to goods and services and the space between movable
       display racks is not at least 36 inches wide in many areas, in violation
       of Section 403.5. There much room for improvement that is readily
       achievable by simply reconfiguring the movable objects. See Lieber v.
       Macy's West, Inc., 80 F. Supp. 2d 1065, 1077 (N.D. Cal. 1999)
       (holding that spacing of movable display racks is governed by the
       more general "readily achievable" standard of the ADA.

32. On information and belief, the property located at Westfield Valencia Town
Center 24201 West Valencia Blvd #3518 Valencia, CA 91355 is currently
not in compliance with the ADA:

    i. Sales & service counter (2010 ADA Standards for Accessible Design
       – 904.4.1): All portions of the counter are higher than 36 inches above
       the floor. Possible readily achievable solution: lowering a section of
       the counter.

    ii. Aisles between movable racks where merchandise is placed (2010
       ADA Standards for Accessible Design – 403.5.1). There are aisles and
       pathways to goods and services and the space between movable

display racks is not at least 36 inches wide in many areas, in violation
of Section 403.5. There much room for improvement that is readily
achievable by simply reconfiguring the movable objects. See Lieber v.
Macy's West, Inc., 80 F. Supp. 2d 1065, 1077 (N.D. Cal. 1999)
(holding that spacing of movable display racks is governed by the
more general "readily achievable" standard of the ADA.

33.    Defendant, 2Bella, Inc., Carola Summers, and Does 1-10, inclusive, own and
operate the following website https://www.2bella.com in violation of the
WCAG 2.0 Standards. A preliminary report for the following page is
attached as Exhibit I: https://www.2bella.com/shipping-policy. This page
violates the following standard: WCAG 2.0 AA. Among others, the size of
the text should be modified, as corroborated by the technical report attached
to this document. This type violation, that affect users with visual limitation,
is found through the website.

34.    Plaintiff visited the facility accompanied by his wife and purchased items for
his wife and his daughters. Purchase receipts were provided to the defendant
to corroborate that Plaintiff was a bona fide patron at the time of the visits.

35.    Maintenance and procedures to keep unobstructed clearance space is not
structural in nature, it is a maintenance and policy issue that involves human
discretion. It is well established that voluntary cessation of allegedly illegal
conduct in the face of litigation does not deprive the court of the power to
hear the case and issue injunctive relief. United States v. W.T. Grant, Co.,
345 U.S. 629 (1953); see also County of Los Angeles v. Davis, 440 U.S.
625, 631 (1979) (a dispute is not moot unless there is no expectation that the
alleged violation will recur, and (2) interim relief or events have completely
and irrevocably eradicated the effects of the alleged. No interim events have
irrevocably eradicated the effects of the violation, because defendant is free.

at his discretion and at any time, to fail to provide adequate maintenance and cause obstructions.

36.    The Plaintiff personally encountered architectural barriers that constitute ADA violations at the Subject Property on the date stated in paragraph 20 and was denied full and equal access because of the violations. See also paragraph 3.

37.    From that date to the present, the Plaintiff has been deterred from the Subject Property because of his knowledge of the existence of barriers that violate the ADA.

38.    The existence of access barriers and ADA violations at the Subject Property caused the Plaintiff unnecessary difficulty and discomfort.

39.    Plaintiff will return to Subject Property after obtaining injunctive relief for the purpose of monitoring the alterations at the property and enforcing any order entered by Court by, among others, testing the property for ADA compliance. See, Civil Rights Education and Enforcement Center v. Hospitality Properties Trust, No. 16-16269 (9th Cir Aug. 7 2017) (there is constitutional standing where a plaintiff's *only* motivation for visiting a facility is to test for ADA compliance).

40.    Plaintiff intents to visit the Subject Property and the business establishments thereat and intends to do so but will be deterred from doing so until the violations are cured.

41.    On information and belief, the violations identified above are readily achievable. The Department of Justice describes many of these kinds of barriers as presumptively readily achievable to remove and Plaintiff contends that the removal of them is easily accomplishable without much difficulty or expense. Likewise, even if strictly compliant barrier removal were not achievable, there are many kinds of alternative accommodations

that could be made to provide a greater degree of accessibility to the Plaintiff and similarly situated persons with mobility disabilities.

42.      On information and belief, Plaintiff alleges that the failure to remove barriers has been knowing, willful and intentional because:

     i.   The barriers described herein are clearly visible and tend to be obvious even to a casual observer;

     ii.   Defendants historically failed to acknowledge that ADA compliance it not a one-time effort, but an ongoing obligation. They refused to promptly remove barriers or create alternative accommodations;

     iii.   The Defendants operate the Subject Property and have control over conditions thereat. They have, and have had, the means and ability to make the necessary remediation of access barriers if they had ever so intended.

     iv.   Today, businesses have an obligation to become accessible, and there is a consequence if they do not: they could be sued. Defendant failed to be proactive and to provide access on its own. Defendant took a "wait and see" attitude. After 28 years since the ADA was enacted on July 26, 1990, Defendant was expected to comply with its legal obligations.

     v.   Defendant ignores the daily experience of thousands of people with disabilities who cannot shop, transact personal business, visit the doctor, or enjoy recreation like most people take for granted, because so many public accommodations across the country, like defendants, have ignored the reasonable requirements of the ADA. The ADA is the difference between participation and exclusion on a daily basis.

     vi.   Plaintiff was not required to provide a written notice of the accessibility issues. No other civil rights law permits businesses to discriminate without consequence unless and until the victims of

discrimination notify the business that it has violated the law. The ADA does not place the heaviest burden for ending discrimination on the very people the law is there to protect.

vii. The ADA is already very carefully crafted to take the needs of business owners into account. Compliance is simply not burdensome. The careful compromise originally designed by a bipartisan Congress in 1990, provides that existing businesses are only required to provide access when doing so is readily achievable. Establishing and running a business necessitates compliance with many laws and rules—that is the cost of doing business. It is unthinkable that we would delay or eliminate consequences for small businesses that failed to pay taxes or meet health and safety codes. Violating the rights of people with disabilities should be treated no differently

viii. There are extensive federal efforts to educate business owners about their ADA obligations, including the in-depth DOJ ADA website (**ada.gov**), the DOJ ADA hotline, extensive DOJ technical assistance materials, and the ten federally-funded regional ADA Centers that provide in-depth resources and training in every state (**adata.org**). Yet defendant have made no meaningful, proactive effort to comply with the ADA.

ix. Defendants failed to acknowledge that the ADA accessibility standards are extremely important. They are not minor details or picky rules, but rather, are essential to ensure true accessibility. A doorway that is too narrow can be the difference between accessing a business or not. A too-short bathroom grab bar can be the difference between using a restroom or being forced to go without a restroom. That said, it is important to point out that to impose liability under the ADA, the barrier does not need to completely preclude plaintiff from entering or

using the facility; it need only *interfere* with the plaintiff's full and equal enjoyment of the facility. See Lobato v. Gomez, Civil No. 15-0686 (E.D. Cal. Oct. 31, 2016); Moeller v. Taco Bell Corp., 816 F.Supp.2d 831, 848 (N.D.Cal.2011) (citing Doran v. 7-Eleven Inc., 524 F.3d 1034, 1041 n. 4 (9th Cir.2008) (discussing that the ADA "does not limit its antidiscrimination mandate to barriers that completely prohibit access.")). "Because the ADAAG establishes the technical standards required for `full and equal enjoyment,' if a barrier violating the ADAAG relates to a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes `discrimination' under the ADA, thereby violating the ADA." Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 947 (9th Cir.2011). s

x. People with disabilities are known to experience a loss of dignity, independence, personhood and pride associated with segregation and lack of access to public accommodations. See Kevin I. Coco, Beyond the Price Tag: An Economic Analysis of Title III of the Americans with Disabilities Act, 20 Kan. J. L. & Pub. Pol'y 58, 76, 85 (Fall 2010). Access barriers and segregation in the retail context create social stigma and undermine feelings of self-worth and independence of persons with disabilities. See Stacey Menzel Baker, Jonna Holland and Carol Kaufman- Scarborough, How Consumers with Disabilities Perceive "Welcome" in Retail Servicescapes: A Critical Incident Study, 23 J. of Serv. Marketing 160, 167-168 (2007). They also cause people with disabilities to have a negative overall reaction to the whole retail environment, and to experience fear and discomfort in that environment. See Carol Kaufman-Scarborough, Reasonable Access for Mobility-Disabled Persons is More Than Widening the Door, 75 J. of Retailing 479, 483, 494 (1999). Studies confirm that the

greater the perceptions of one's disabilities as a preventive factor in participation in the marketplace, the less satisfied one is with life. See Carol Kaufman-Scarborough and Stacey Menzel Baker, Do People with Disabilities Believe the ADA Has Served Their Consumer Interests?, 39 J. of Consumer Aff. 1, 24 (Summer 2005).

xi.  Plaintiff vehemently rejects the proposition that private enforcement of the ADA is not legitimate, regardless of the size of the business. Compliance with the ADA's physical accessibility standards requires business owners and other places of public accommodation to take proactive steps and, often, to incur costs. Unfortunately, here, the ADA's threat of injunctive relief was not sufficient to guarantee voluntary compliance. Defendant erroneously assumes that barrier removal is more expensive than it is, and underestimates the amount of new patronage that would result from making their businesses accessible.[1] An owner's assessment of the costs and benefits of accessibility may be skewed by prejudice against or stereotyping of people with disabilities, even if the prejudice or stereotyping is unconscious. See Samuel R. Bagenstos, Subordination, Stigma, and "Disability," 86 VA. L. REV. 397, 423–24, 438–42. (2000). The ADA was not enough to convince defendant to comply with the law and the goal of this lawsuit is to see that they finally do.

43.  Access barriers at the Subject Property are being consciously ignored by the Defendants; the Defendants have knowingly disregarded the ongoing duty to remove the barriers in compliance with the ADA.

---

[1]  See also. Michael Ashley Stein, The Law and Economics of Disability Accommodations, 53 DUKE L.J. 79, 124–27 (2003).

44. Plaintiff alleges on information and belief that there are other ADA violations and unlawful architectural barriers at the Subject Property that relate to his mobility disability.

45. Plaintiff hereby seeks to remediate and remove all barriers related to his disability, whether presently known or unknown. As the court held in <u>Doran v. 7-11. Inc.</u>, 506 F.3d 1191 (9th Cir. 2008):

> "[W]here a disabled person has Article III standing to bring a claim for injunctive relief under the ADA because of at least one alleged statutory violation of which he or she has knowledge and which deters access to, or full use and enjoyment of, a place of public accommodation, he or she may conduct discovery to determine what, if any, other barriers affecting his or her disability existed at the time he or she brought the claim. This list of barriers would then in total constitute the factual underpinnings of a single legal injury, namely, the failure to remove architectural barriers in violation of the ADA, which failure actually harmed the disabled person by deterring that disabled person from visiting a facility that otherwise would have been visited at a definite future time, yielding Article III standing."

46. The violations and references to code sections herein are not all-inclusive. Plaintiff will amend this complaint to provide a complete description of the full scope of ADA violations after conducting a comprehensive expert site inspection. For the purposes of this Complaint, Plaintiff asserts that the barriers alleged herein violate one or more of the ADA's implementing regulations.

## FIRST CAUSE OF ACTION
### Discrimination Based on Disability
### [42 U.S.C. § 12101, et seq]
### By Plaintiff against all Defendants

47. Plaintiff re-alleges and incorporates by reference as though fully set forth herein the allegations contained in all prior paragraphs of this complaint.

48.    The ADA obligates owners, operators, lessees and lessors of public accommodations to ensure that the privileges, advantages, accommodations, facilities, goods and services are offered fully and equally to persons with disabilities, including the Plaintiff and others similarly situated [42 U.S.C. § 12182(a)].

49.    Discrimination is defined in the ADA, inter alia, as follows:

i.   A failure to remove architectural barriers where such removal is readily achievable [42 U.S.C. § 12182(b)(2)(A)(iv)]. Barriers are identified and described in the Americans with Disabilities Act Accessibility Guidelines (the "ADAAG") [28 C.F.R. Part 36, Appendix "D"];

ii.  A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities [42 U.S.C. § 12183(a)(2)];

iii. Where an entity can demonstrate that the removal of a barrier is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable [42 U.S.C. § 12182(b)(2)(A)(v)].

50.    The ADA, the ADAAG's 1991 Standards (the "1991 Standards") and 2010 Standards (the "2010 Standards"), and the California Building Code (the "CBC") contain minimum standards that constitute legal requirements regarding accessibility at places of public accommodation.

51.   The Defendants have failed to comply with minimum ADA standards and have discriminated against the Plaintiff on the basis of his mobility disability. Each of the barriers and accessibility violations set forth above is readily achievable to remove, is the result of an alteration that was completed without meeting minimum ADA standards, or could be easily remediated by implementation of one or more available alternative accommodations. Accordingly, the Defendants have violated the ADA.

### Failure to Design and Construct an Accessible Facility

52.   Plaintiff alleges on information and belief that the Subject Facility was designed and constructed (or both) after January 26, 1992 – independently triggering access requirements under Title III of the ADA.

53.   The ADA also prohibits designing and constructing facilities for first occupancy after January 16, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

54.   Here, Defendants violated the ADA by designing and constructing (or both) the Facility in a manner that was not readily accessible to the physically disabled public – including Plaintiff – when it was structurally practical to do so.

### Failure to Make an Altered Facility Accessible

55.   Plaintiff alleges on information and belief that the Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

56.   The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with

disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. Id. Here, Defendants altered the Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public – including Plaintiff – to the maximum extent feasible.

57.    The Defendants are obligated to maintain in operable working condition those features of the Subject Property's facilities and equipment that are required to be readily accessible to and usable by Plaintiff and similarly situated persons with disabilities [28 C.F.R. § 36.211(a)]. The Defendants failure to ensure that accessible facilities at the Subject Property were available and ready to be used by the Plaintiff violates the ADA.

58.    The Defendants have a duty to remove architectural barriers where readily achievable, to make alterations that are consistent with minimum ADA standards and to provide alternative accommodations where necessary to provide access. The Defendants benign neglect of these duties, together with their general apathy and indifference, violations the ADA.

59.    The Defendants wrongful conduct is continuing in that Defendants continue to deny full, fair and equal access to their business establishment and full, fair and equal accommodations, advantages, facilities, privileges and services to Plaintiff as a disabled person due to Plaintiff's disability. The foregoing conduct constitutes unlawful discrimination against the Plaintiff and other mobility disabled persons who, like the Plaintiff, will benefit from an order that the Defendants remove barriers and improve access by complying with minimum ADA standards.

**SECOND CAUSE OF ACTION**
**Violations of the Unruh Rights Act**
**[Cal. Civil Code§ 51, et seq.]**

**By Plaintiff against all Defendants**

60.    Plaintiff re-alleges and incorporates by reference as though fully set forth herein the allegations contained in all prior paragraphs of this complaint.

61.    The foregoing violations of the ADA constitute per se violations of the Unruh Act [Cal. Civil Code§ 51(f)].

62.    Plaintiff is entitled to statutory damages because he was denied full and equal access to the Subject Property, because he personally encountered access barriers at the Subject Property that discriminated against him on the basis of his mobility disability, because he was deterred from accessing the Subject Property, and because the violations caused him difficulty, discomfort or embarrassment [Cal. Civil Code §§ 52 and 55.56].

63.    Plaintiff was denied full and equal access to the Subject Property because he personally encountered ADA violations on a particular occasion.

64.    Plaintiff is currently deterred from accessing the Subject Property on occasions due to his actual knowledge of ADA violations that cause unnecessarily difficulties. His actual knowledge reasonably dissuaded him from accessing the Subject Property, which he intended to use on particular occasions and because the violations would have actually denied Plaintiff full and equal access if he had accessed the Subject Property on those particular occasions.

65.    Due to the intentional unlawful discrimination set forth above, Plaintiff has been denied the right and entitlement to full and equal accommodations, advantages, facilities, privileges or services at the Subject Property in violation of the Unruh Act.

### PRAYER FOR RELIEF

Wherefore, Plaintiff prays this Court award damages and provide relief as follows:

1.    For injunctive relief compelling the Defendants to comply with the ADA and the Unruh Act.

2.    For damages under the Unruh Act, which provides for actual damages or statutory damages of $4,000 per incident of discrimination; and

3.    For punitive damages under the Unruh act, which provides for exemplary damages per incident of willful discrimination. Cal. Civil Code § 52(b)(1).

4.    For reasonable attorney's fees (counsel will be retained in due course), litigation expenses and costs of suit pursuant to 42 U.S.C. § 12205 and Cal. Civil Code § 52.

Dated this August 23, 2018.

JOSE VELEZ
PLAINTIFF
IN PROPRIA PERSONA

**https://www.2bella.com/shipping-policy – WCAG 2.0 AA**    *Exhibit F*

Scan completed: 8/23/2018 10:38:04 AM

Group
- ☒ Compliance Level A

  The priority set of WCAG 2.0 criteria. Generally these requirements are the most important and will have the widest
  impact on the accessibility of your site.

  - ☒ Criterion 1.3.1 [Info and Relationships]

    The intent of this Success Criterion is to ensure that information and relationships that are implied by visual or
    auditory formatting are preserved when the presentation format changes. For example, the presentation format
    changes when the content is read by a screen reader or when a user style sheet is substituted for the style sheet
    provided by the author.

    - ☒ H97 Grouping related links using the nav element

      The objective of this technique is to group navigation links using the HTML5 nav element. The nav element is
      one of several sectioning elements in HTML5. Use of this markup can make groups of links easier to locate and
      skip past by users of assistive technology such as screen readers. Using semantic structures allow custom style
      sheets to be used to change the presentation of groups of links while preserving their relationship. When the
      nav element is employed more than once on a page, distinguish the navigation groups by using an aria-label or
      aria-labelledby attribute.

      - ☒ Nav element doesn't have valid ARIA attribute.
        - https://www.2bella.com/shipping-policy
          - Line 2411, column 79, nav element
          - Line 2411, column 4455, nav element

    - ☒ H42 Use h1-h6 to identify headings

      The objective of this technique is to use HTML and XHTML heading markup to convey the structure of the
      content.

      - ☒ Page uses headers according to specification.
        - https://www.2bella.com/shipping-policy

    - ☒ H39 Use caption elements to associate data table captions with data tables

      The objective of this technique is to programmatically associate captions for data tables where captions are
      provided in the presentation. The caption for a table is a table identifier and acts like a title or heading for the
      table.

      - ☒ No tables on page
        - https://www.2bella.com/shipping-policy

    - ☒ H43 Use id and headers attributes to associate data cells with header cells in ...

      The objective of this technique is to associate each data cell (in a data table) with the appropriate headers. This
      technique adds a headers attribute to each data cell (td element). It also adds an id attribute to any cell used
      as a header for other cells. The headers attribute of a cell contains a list of the id attributes of the associated
      header cells. If there is more than one id, they are separated by spaces.

      - ☒ Page does not contain complex data tables.
        - https://www.2bella.com/shipping-policy

    - ☒ H44 Use label elements to associate text labels with form controls

      The objective of this technique is to use the label element to explicitly associate a form control with a label. A
      label is attached to a specific form control through the use of the for attribute. The value of the for attribute
      must be the same as the value of the id attribute of the form control.

      - ☒ No LABEL 'FOR' attribute found on page.
        - https://www.2bella.com/shipping-policy

    - ☒ H51 Use table markup to present tabular information

      The objective of this technique is to present tabular information in a way that preserves relationships within the
      information even when users cannot see the table or the presentation format is changed. Information is
      considered tabular when logical relationships among text, numbers, images, or other data exist in two
      dimensions (vertical and horizontal). These relationships are represented in columns and rows, and the columns
      and rows must be recognizable in order for the logical relationships to be perceived.

      - ☒ No tables used on page
        - https://www.2bella.com/shipping-policy

    - ☒ H63 Use the scope attribute to associate header cells and data cells in data ...

      The objective of this technique is to associate header cells with data cells using the scope attribute. The scope
      attribute may be used to clarify the scope of any cell used as a header. The scope identifies whether the cell is
      a header for a row, column, or group of rows or columns. The values row, col, rowgroup, and colgroup
      identify these possible scopes respectively.

      - ☒ No tables used on page
        - https://www.2bella.com/shipping-policy

    - ☒ H65 Use the title attribute to identify form controls when the label element ...

      The objective of this technique is to use the title attribute to label form controls when the visual design
      cannot accommodate the label (for example, if there is no text on the screen that can be identified as a label)
      or where it might be confusing to display a label. User agents, including assistive technology, can speak the
      title attribute.

      - ☒ No controls found that require labels
        - https://www.2bella.com/shipping-policy

    - ☒ H73 Use the summary attribute of the table element to give an overview of data ...

      The objective of this technique is to provide a brief overview of how data has been organized into a table or a
      brief explanation of how to navigate the table. The summary attribute of the table element makes this
      information available to people who use screen readers; the information is not displayed visually.

      - ☒ Summary attribute is not supported in HTML5.
        - https://www.2bella.com/shipping-policy

    - ☒ H85 Use OPTGROUP to group OPTION elements inside a SELECT

The objective of this technique is to group items in a selection list. A selection list is a set of allowed values for a form control such as a multi-select list or a combo box. Often, selection lists have groups of related options. Those groups should be semantically identified, rather than simply delimiting the groups with 'dummy' list entries. This allows user agents to collapse the options by group to support quicker skimming of the options, and to indicate in what group an option of interest is located. It also helps to visually break up long lists so that users can more easily locate the option(s) they are interested in.

- Page has no SELECT elements
    - https://www.2bella.com/shipping-policy
○ Criterion 2.4.4 [Link Purpose (In Context)]

The intent of this Success Criterion is to help users understand the purpose of each link so they can decide whether they want to follow the link. Whenever possible, provide link text that identifies the purpose of the link without needing additional context. Assistive technology has the ability to provide users with a list of links that are on the Web page. Link text that is as meaningful as possible will aid users who want to choose from this list of links. Meaningful link text also helps those who wish to tab from link to link. Meaningful links help users choose which links to follow without requiring complicated strategies to understand the page.

- H30 Providing link text that describes the purpose of a link for anchor elements

The objective of this technique is to describe the purpose of a link by providing deive text as the content of the a element. The deion lets a user distinguish this link from other links in the Web page and helps the user determine whether to follow the link. The URI of the destination is generally not sufficiently deive. When an image is the only content of a link, the text alternative for the image describes the unique function of the link. When the content of a link contains both text and one or more images, if the text is sufficient to describe the purpose of the link, the images may have an empty text alternative. (See Using null alt text and no title attribute on img elements for images that assistive technology should ignore.) When the images convey information beyond the purpose of the link, they must also have appropriate alt text.

- Anchor element does not have alternative text which describes purpose of the link.
    - https://www.2bella.com/shipping-policy
        - Line 2407, column 230, a element, HREF = "https://www.2bella.com"
        - Line 2826, column 402, a element, HREF = "https://www.facebook.com/2bella.boutique/"
        - Line 2826, column 1804, a element, HREF = "https://www.instagram.com/2bellaboutique/?hl=en"
- Confirm anchor element text describes the purpose of the link.
    - https://www.2bella.com/shipping-policy
        - Line 2411, column 738, a element, HREF = "https://www.2bella.com"
        - Line 2411, column 1386, a element, HREF = "https://www.2bella.com/whatsnew"
        - Line 2411, column 2662, a element, HREF = "https://www.2bella.com/cashmere"
        - Line 2411, column 3314, a element, HREF = "https://www.2bella.com/locations"
        - Line 2716, column 260, a element, HREF = "https://www.2bella.com/shipping-policy"
        - Line 2738, column 222, a element, HREF = "https://www.2bella.com/return-policy"
        - Line 2760, column 250, a element, HREF = "https://www.2bella.com/about"
        - Line 2782, column 221, a element, HREF = "https://www.2bella.com/locations"
        - Line 2831, column 306, a element, HREF = "https://www.2bella.com/contact"
        - Line 2853, column 244, a element, HREF = "https://www.2bella.com/gift-card"
- H24 Provide text alternatives for the area elements of image maps

The objective of this technique is to provide text alternatives that serve the same purpose as the selectable regions of an image map. An image map is an image divided into selectable regions defined by area elements. Each area is a link to another Web page or another part of the current Web page. The alt attribute of each area element serves the same purpose as the selectable area of the image.

- Page has no AREA elements.
    - https://www.2bella.com/shipping-policy
- H33 Supplement link text with the title attribute

The objective of this technique is to demonstrate how to use a title attribute on an anchor element to provide additional text describing a link. The title attribute is used to provide additional information to help clarify or further describe the purpose of a link. If the supplementary information provided through the title attribute is something the user should know before following the link, such as a warning, then it should be provided in the link text rather than in the title attribute.

- Page has no links with title attributes
    - https://www.2bella.com/shipping-policy
- H79 Identifying the purpose of a link in a data table using the link text combine...

The objective of this technique is to identify the purpose of a link from the link in its data table context. This context is the table cell enclosing the link and the cell's associated table header cells. The data table context provides the purpose for an otherwise unclear link when the table cell is the nearest enclosing block-level ancestor element. It lets a user distinguish this link from other links in the Web page that lead to other destinations and helps the user determine whether to follow the link. Note that simply providing the URI of the destination is not sufficiently deive for people with disabilities, especially those with cognitive disabilities.

- Page does not have TD or TH table elements with links.
    - https://www.2bella.com/shipping-policy
○ Criterion 1.1.1 [Non-text Content]

The intent of this Success Criterion is to make information conveyed by non-text content accessible through the use of a text alternative. Text alternatives are a primary way for making information accessible because they can be rendered through any sensory modality (for example, visual, auditory or tactile) to match the needs of the user. Providing text alternatives allows the information to be rendered in a variety of ways by a variety of user agents. For example, a person who cannot see a picture can have the text alternative read aloud using synthesized speech. A person who cannot hear an audio file can have the text alternative displayed so that he or she can read it. In the future, text alternatives will also allow information to be more easily translated into sign language or into a simpler form of the same language.

- F3 Failure of Success Criterion 1.1.1 due to using CSS to include images that co...

The CSS background-image property provides a way to include images in the document with CSS without any reference in the HTML code. The CSS background-image property was designed for making information accessible because it is not possible to associate text alternatives with images that are included via CSS. Text alternatives are necessary for people who cannot see images that convey important information. Therefore, it is a failure to use this property to add images to convey important information.

- Ensure that image used in background-url for element is not conveying information
    - https://www.2bella.com/shipping-policy
        - Line 2, column 1, HTML element
        - Line 132, column 1, title element, #content = "2bella | Online Women's Boutique | Trendy and Cute Boutique | Shipping Policy"
        - Line 165, column 1, BODY element

- Line 184, column 5, div element
- Line 184, column 30, div element
- Line 184, column 96, div element
- Line 2326, column 15, div element
- Line 2326, column 131, div element
- Line 2326, column 204, div element
- Line 2326, column 285, div element
- Line 2326, column 366, div element
- Line 2326, column 465, div element
- Line 2326, column 675, div element
- Line 2326, column 866, div element
- Line 2326, column 945, div element
- Line 2328, column 68, div element
- Line 2328, column 148, div element
- Line 2340, column 10, header element
- Line 2340, column 227, div element
- Line 2340, column 340, div element
- Line 2340, column 383, div element
- Line 2340, column 458, div element
- Line 2340, column 564, div element
- Line 2340, column 614, div element
- Line 2352, column 10, div element
- Line 2352, column 191, h1 element
- Line 2352, column 253, span element
- Line 2352, column 276, span element
- Line 2352, column 306, span element
- Line 2374, column 35, div element
- Line 2374, column 226, iframe element
- Line 2374, column 1392, div element
- Line 2387, column 92, section element
- Line 2387, column 269, div element
- Line 2387, column 630, div element
- Line 2387, column 761, div element
- Line 2387, column 920, div element
- Line 2387, column 1049, div element
- Line 2387, column 1255, div element
- Line 2387, column 1309, div element
- Line 2387, column 1625, div element
- Line 2387, column 1757, div element
- Line 2387, column 1926, div element
- Line 2387, column 2056, div element
- Line 2407, column 10, div element
- Line 2407, column 230, a element, HREF = "https://www.2bella.com"
- Line 2407, column 364, div element
- Line 2407, column 420, img element
- Line 2411, column 79, nav element
- Line 2411, column 422, ul element
- (292 more)

- **F30 Failure of Success Criterion 1.1.1 and 1.2.1 due to using text alternatives t...**
  > This describes a failure condition for all techniques involving text alternatives. If the text in the "text alternative" cannot be used in place of the non-text content without losing information or function then it fails because it is not, in fact, an alternative to the non-text content. For example the alt text is the same as the item image name is graph.jpg and the alt text is graph.jpg
  - **Image has descriptive alt text**
    - https://www.2bella.com/shipping-policy

- **H2 Combine adjacent image and text links for the same resource**
  > This objective of this technique is to avoid unnecessary duplication that occurs when adjacent text and iconic versions of a link are contained in a
  - **No adjacent links for same resource found**
    - https://www.2bella.com/shipping-policy

- **F67 Failure of Success Criterion 1.1.1 and 1.2.1 due to providing long descriptio...**
  > The objective of this technique is to describe the failure that occurs when the long deion for non-text content does not serve the same purpose or does not present the same information as the non-text content. This can cause problems for people who cannot interpret the non-text content because they rely on the long deion to provide the necessary information conveyed by the non-text content. Without a long deion that provides complete information, a person may not be able to comprehend or interact with the Web page.
  - **Images were found; however none had a long description attribute.**
    - https://www.2bella.com/shipping-policy

- **G144 Ensuring that the Web Page contains another CAPTCHA serving the same purpose ...**
  > The purpose of this technique is to reduce occasions in which a user with a disability cannot complete a CAPTCHA task. Because there are alternate CAPTCHA tasks that use different modalities, a user is more likely to be able to complete one of the tasks successfully.
  - **No CAPTCHA element found.**
    - https://www.2bella.com/shipping-policy

- **H24 Provide text alternatives for the area elements of image maps**
  > The objective of this technique is to provide text alternatives that serve the same purpose as the selectable regions of an image map. An image map is an image divided into selectable regions defined by area elements. Each area is a link to another Web page or another part of the current Web page. The alt attribute of each area element serves the same purpose as the selectable area of the image.
  - **Page has no AREA elements.**
    - https://www.2bella.com/shipping-policy

- **H27 Provide text and non-text alternatives for object**
  > If object is used, provide a text alternative in the content of the element:
  - **No objects on page**
    - https://www.2bella.com/shipping-policy

- **H35 Provide text alternatives on applet elements**

> Provide a text alternative for an applet by using the alt attribute to label an applet and providing the text alternative in the body of the applet element. Both mechanisms are required due to the varying support of the alt attribute and applet body text by user agents.

- No APPLET elements found.
  - https://www.2bella.com/shipping-policy
- H36 Use alt attributes on images used as submit buttons
  > For input elements of type 'image', the alt attribute of the input element is used to provide a functional label. This label indicates the button's function, but does not attempt to describe the image. The label is especially important if there are multiple submit buttons on the page that each lead to different results.
  - No INPUT image elements found in document.
    - https://www.2bella.com/shipping-policy
- H37 Use alt attributes on img elements
  > When using the img element, specify a short text alternative with the alt attribute. Note. The value of this attribute is referred to as "alt text".
  - Page does not have IMG elements.
    - https://www.2bella.com/shipping-policy
- H44 Use label elements to associate text labels with form controls
  > The objective of this technique is to use the label element to explicitly associate a form control with a label. A label is attached to a specific form control through the use of the for attribute. The value of the for attribute must be the same as the value of the id attribute of the form control.
  - No LABEL 'FOR' attribute found on page.
    - https://www.2bella.com/shipping-policy
- H45 Use longdesc
  > The objective of this technique is to provide information in a file designated by the longdesc attribute when a short text alternative does not adequately convey the function or information provided in the image. The longdesc attribute is a URI, the target of which contains a long deion of the non-text content.
  - No IMG elements with LONGDESC attribute found
    - https://www.2bella.com/shipping-policy
- H46 When EMBED elements are used, the NOEMBED element is required in the page
  > EMBED elements present functionality not available to all users. The NOEMBED element can be used to provide a deion.
  - Page does not have EMBED elements.
    - https://www.2bella.com/shipping-policy
- H53 Use the body of the object element
  > The objective of this technique is to provide a text alternative for content rendered using the object element. The body of the object element can be used to provide a complete text alternative for the object or may contain additional non-text content with text alternatives.
  - Page does not have OBJECT elements.
    - https://www.2bella.com/shipping-policy
- H65 Use the title attribute to identify form controls when the label element ...
  > The objective of this technique is to use the title attribute to label form controls when the visual design cannot accommodate the label (for example, if there is no text on the screen that can be identified as a label) or where it might be confusing to display a label. User agents, including assistive technology, can speak the title attribute.
  - No controls found that require labels
    - https://www.2bella.com/shipping-policy
- H67 Use null alt text and no title attribute on img elements for images that AT s...
  > The purpose of this technique is to show how images can be marked so that they can be ignored by Assistive Technology.
  - Page does not have images.
    - https://www.2bella.com/shipping-policy
- Criterion 1.3.2 [Meaningful Sequence]
  > The intent of this Success Criterion is to enable a user agent to provide an alternative presentation of content while preserving the reading order needed to understand the meaning. It is important that it be possible to programmatically determine at least one sequence of the content that makes sense. Content that does not meet this Success Criterion may confuse or disorient users when assistive technology reads the content in the wrong order, or when alternate style sheets or other formatting changes are applied.
  - C27 Making the DOM order match the visual order
    - Elements displayed with absolute positioning may be out of logical DOM order
      - https://www.2bella.com/shipping-policy
        - Line 2340, column 10, header element
        - Line 2340, column 383, div element
        - Line 2340, column 614, div element
        - Line 2352, column 10, div element
        - Line 2387, column 92, section element
        - Line 2387, column 1926, div element
        - Line 2387, column 2056, div element
        - Line 2411, column 79, nav element
        - Line 2448, column 90, div element
        - Line 2448, column 420, div element
        - Line 2448, column 557, div element
        - Line 2448, column 621, div element
        - Line 2448, column 748, div element
        - Line 2448, column 1050, div element
        - Line 2460, column 10, div element
        - Line 2460, column 196, div element
        - Line 2460, column 269, div element
        - Line 2552, column 106, section element
        - Line 2552, column 1932, div element
        - Line 2552, column 2062, div element
        - Line 2560, column 10, div element
        - Line 2607, column 84, footer element
        - Line 2607, column 513, div element

- Line 2607, column 763, div element
- Line 2651, column 10, section element
- Line 2651, column 1843, div element
- Line 2651, column 1973, div element
- Line 2672, column 184, div element
- Line 2694, column 35, div element
- Line 2716, column 35, div element
- Line 2738, column 35, div element
- Line 2760, column 35, div element
- Line 2782, column 35, div element
- Line 2804, column 35, div element
- Line 2831, column 90, div element
- Line 2853, column 35, div element
- Line 2883, column 102, div element
- Line 2883, column 163, div element

- ⬛H56 Use the dir attribute on an inline element to resolve problems with ...

  The objective of this technique is to identify changes in the text direction of text that includes nested directional runs by providing the dir attribute on inline elements. A nested directional run is a run of text that includes mixed directional text, for example, a paragraph in English containing a quoted Hebrew sentence which in turn includes an English phrase. Use of the dir attribute on an enclosing span or other inline element may be necessary because the Unicode bidirectional algorithm can produce undesirable results when mixed directional text contains spaces or punctuation. The concepts used in this technique are described in What you need to know about the bidi algorithm and inline markup.

  - ⬛Verify reading direction is expressed correctly
    - https://www.2bella.com/shipping-policy
    - Line 2411, column 79, nav element

- ⬛Criterion 1.3.3 [Sensory Characteristics]

  The intent of this Success Criterion is to ensure that all users can access instructions for using the content, even when they cannot perceive shape or size or use information about spatial location or orientation. Some content relies on knowledge of the shape or position of objects that are not available from the structure of the content (for example, "round button" or "button to the right"). Some users with disabilities are not able to perceive shape or position due to the nature of the assistive technologies they use. This Success Criterion requires that additional information be provided to clarify anything that is dependent on this kind of information.

  - ⬛F14 Failure of Success Criterion 1.3.3 due to identifying content only by its sha...

    The objective of this technique is to show how identifying content only by its shape or location makes content difficult to understand and operate. When only visual identification or location is used, users with visual disabilities may find it difficult to locate content since they cannot see the screen or may perceive only a small portion of the screen at one time. Also, location of content can vary if page layout varies due to variations in font, window, or screen size.

    - ⬛Verify page does not use shape or location to explain instructions
      - https://www.2bella.com/shipping-policy

- ⬛Criterion 1.4.1 [Use of Color]

  The intent of this Success Criterion is to ensure that all users can access information that is conveyed by color differences, that is, by the use of color where each color has a meaning assigned to it. If the information is conveyed through color differences in an image (or other non-text format), the color may not be seen by users with color deficiencies. In this case, providing the information conveyed with color through another visual means ensures users who cannot see color can still perceive the information.

  - ⬛G14 Ensure that information conveyed by color differences is also available in text

    The objective of this technique is to ensure that when color differences are used to convey information, such as required form fields, the information conveyed by the color differences are also conveyed explicitly in text.

    - ⬛Page references an external style-sheet. Visual check required.
      - https://www.2bella.com/shipping-policy

- ⬛Criterion 2.3.1 [Three Flashes or Below Threshold]

  The intent of this Success Criterion is to allow users to access the full content of a site without inducing seizures due to photosensitivity.

  - ⬛G19 Ensure that no component of the content flashes more than three times in any ...

    The objective of this technique is to avoid flashing at rates that are known to cause seizures if the flashes are bright and large enough. Since some users may be using screen enlargers, this technique limits the flashing of any size content to no more than three flashes in any 1-second period.

    - ⬛Page may contain elements that cause flickering.
      - https://www.2bella.com/shipping-policy

- ⬛Criterion 2.4.3 [Focus Order]

  The intent of this Success Criterion is to ensure that when users navigate sequentially through content, they encounter information in an order that is consistent with the meaning of the content and can be operated from the keyboard. This reduces confusion by letting users form a consistent mental model of the content. There may be different orders that reflect logical relationships in the content. For example, move through components in a table one row at a time or one column at a time both reflect the logical relationships in the content. Either order may satisfy this Success Criterion.

  - ⬛C27 Making the DOM order match the visual order
    - ⬛Elements displayed with absolute positioning may be out of logical DOM order
      - https://www.2bella.com/shipping-policy
        - Line 2340, column 10, header element
        - Line 2340, column 383, div element
        - Line 2340, column 614, div element
        - Line 2352, column 10, div element
        - Line 2387, column 92, section element
        - Line 2387, column 1926, div element
        - Line 2387, column 2056, div element
        - Line 2411, column 79, nav element
        - Line 2448, column 90, div element
        - Line 2448, column 420, div element
        - Line 2448, column 557, div element
        - Line 2448, column 621, div element
        - Line 2448, column 748, div element
        - Line 2448, column 1050, div element

- Line 2460, column 10, div element
- Line 2460, column 196, div element
- Line 2460, column 269, div element
- Line 2552, column 106, section element
- Line 2552, column 1932, div element
- Line 2552, column 2062, div element
- Line 2560, column 10, div element
- Line 2607, column 84, footer element
- Line 2607, column 513, div element
- Line 2607, column 763, div element
- Line 2651, column 10, section element
- Line 2651, column 1843, div element
- Line 2651, column 1973, div element
- Line 2672, column 184, div element
- Line 2694, column 35, div element
- Line 2716, column 35, div element
- Line 2738, column 35, div element
- Line 2760, column 35, div element
- Line 2782, column 35, div element
- Line 2804, column 35, div element
- Line 2831, column 90, div element
- Line 2853, column 35, div element
- Line 2883, column 102, div element
- Line 2883, column 163, div element
- H4 Create a logical tab order through links, form controls, and objects

  The objective of this technique is to provide a logical tab order when the default tab order does not suffice. Often, G59: Placing the interactive elements in an order that follows sequences and relationships within the content is sufficient and this technique is not necessary. It can be very easy to introduce usability bugs when setting the tab order explicitly.

  - Ensure that content is in logical tab order.
    - https://www.2bella.com/shipping-policy

○ Criterion 4.1.1 [Parsing]

The intent of this Success Criterion is to ensure that user agents, including assistive technologies, can accurately interpret and parse content. If the content cannot be parsed into a data structure, then different user agents may present it differently or be completely unable to parse it. Some user agents use "repair techniques" to render poorly coded content.

- G134 Validate Web pages

  The objective of this technique is to avoid ambiguities in Web pages that often result from code that does not validate against formal specifications. Each technology's mechanism to specify the technology and technology version is used, and the Web page is validated against the formal specification of that technology. If a validator for that technology is available, the developer can use it.

  - Verify page has been run through W3C validator
    - https://www.2bella.com/shipping-policy

○ Criterion 2.1.1 [Keyboard]

The intent of this Success Criterion is to ensure that, wherever possible, content can be operated through a keyboard or keyboard interface (so an alternate keyboard can be used). When content can be operated through a keyboard or alternate keyboard, it is operable by people with no vision (who cannot use devices such as mice that require eye-hand coordination) as well as by people who must use alternate keyboards or input devices that act as keyboard emulators. Keyboard emulators include speech input software, sip-and-puff software, on-screen keyboards, scanning software and a variety of assistive technologies and alternate keyboards. Individuals with low vision also may have trouble tracking a pointer and find the use of software much easier (or only possible) if they can control it from the keyboard.

- SCR2 Using redundant keyboard and mouse event handlers

  - No elements on page using mouse event handlers but no corresponding keyboard handlers
    - https://www.2bella.com/shipping-policy

○ Criterion 2.4.1 [Bypass Blocks]

The intent of this Success Criterion is to allow people who navigate sequentially through content more direct access to the primary content of the Web page. Web pages and applications often have content that appears on other pages or screens. Examples of repeated blocks of content include but are not limited to navigation links, heading graphics, and advertising frames. Small repeated sections such as individual words, phrases or single links are not considered blocks for the purposes of this provision.

- H64 Using the title attribute of the frame and iframe elements

  The objective of this technique is to demonstrate the use of the title attribute of the frame or iframe element to describe the contents of each frame. This provides a label for the frame so users can determine which frame to enter and explore in detail. It does not label the individual page (frame) or inline frame (iframe) in the frameset. Note that the title attribute labels frames, and is different from the title element which labels documents. Both should be provided, since the first facilitates navigation among frames and the second clarifies the user's current The title attribute is not interchangeable with the name attribute. The title labels the frame for users; the name labels it for ing and window targeting. The name is not presented to the user, only the title is.

  - FRAME element has a TITLE attribute.
    - https://www.2bella.com/shipping-policy

○ Criterion 2.4.2 [Page Titled]

The intent of this Success Criterion is to help users find content and orient themselves within it by ensuring that each Web page has a deive title. Titles identify the current location without requiring users to read or interpret page content. When titles appear in site maps or lists of search results, users can more quickly identify the content they need. User agents make the title of the page easily available to the user for identifying the page. For instance, a user agent may display the page title in the window title bar or as the name of the tab containing the page.

- H25 Pages are required to use the TITLE element

  - TITLE supplied for page
    - https://www.2bella.com/shipping-policy

○ Criterion 3.1.1 [Language of Page]

The intent of this Success Criterion is to ensure that content developers provide information in the Web page that user agents need to present text and other linguistic content correctly. Both assistive technologies and conventional user agents can render text more accurately when the language of the Web page is identified. Screen readers can

load the correct pronunciation rules. Visual browsers can display characters and s correctly. Media players can show captions correctly. As a result, users with disabilities will be better able to understand the content.

- H57 Use language attributes on the html element

  The objective of this technique is to identify the default language of a document by providing the lang and/or xml:lang attribute on the html element.

  - HTML element specifies the LANG attribute.
    - https://www.2bella.com/shipping-policy

- Criterion 4.1.2 [Name, Role, Value]

  The intent of this Success Criterion is to ensure that Assistive Technologies (AT) can gather information about, activate(or set) and keep up to date on the status of user interface controls in the content.

  - H64 Using the title attribute of the frame and iframe elements

    The objective of this technique is to demonstrate the use of the title attribute of the frame or iframe element to describe the contents of each frame. This provides a label for the frame so users can determine which frame to enter and explore in detail. It does not label the individual page (frame) or inline frame (iframe) in the frameset. Note that the title attribute labels frames, and is different from the title element which labels documents. Both should be provided, since the first facilitates navigation among frames and the second clarifies the user's current The title attribute is not interchangeable with the name attribute. The title labels the frame for users; the name labels it for ing and window targeting. The name is not presented to the user, only the title is.

    - FRAME element has a TITLE attribute.
      - https://www.2bella.com/shipping-policy

  - H44 Use label elements to associate text labels with form controls

    The objective of this technique is to use the label element to explicitly associate a form control with a label. A label is attached to a specific form control through the use of the for attribute. The value of the for attribute must be the same as the value of the id attribute of the form control.

    - No LABEL 'FOR' attribute found on page.
      - https://www.2bella.com/shipping-policy

  - H65 Use the title attribute to identify form controls when the label element ...

    The objective of this technique is to use the title attribute to label form controls when the visual design cannot accommodate the label (for example, if there is no text on the screen that can be identified as a label) or where it might be confusing to display a label. User agents, including assistive technology, can speak the title attribute.

    - No controls found that require labels
      - https://www.2bella.com/shipping-policy

  - HS4 DEMO: Verifying compliant toolbar

    For all user interface components (including but not limited to: form elements, links and components generated by s), the name and role can be programmatically determined; states, properties, and values that can be set by the user can be programmatically set; and notification of changes to these items is available to user agents, including assistive technologies.

    - No toolbars on page
      - https://www.2bella.com/shipping-policy

- Criterion 1.2.1 [Audio-only and Video-only (Prerecorded)]

  The intent of this Success Criterion is to make information conveyed by prerecorded audio-only and prerecorded video-only content available to all users. Text alternatives used to make information accessible because they can be rendered through any sensory modality (for example, visual, auditory or tactile) to match the needs of the user.

  - G158 Provide a full text transcript for the audio

    The purpose of this technique is to provide an accessible alternative way of presenting the information in an audio-only presentation.

    - Page does not contain audio
      - https://www.2bella.com/shipping-policy

  - G159 Provide a full text transcript of the video content

    The purpose of this technique is to provide an accessible alternative way of presenting the information in an video-only presentation.

    - No videos on page
      - https://www.2bella.com/shipping-policy

  - H96 Using the track element to provide audio descriptions

    The objective of this technique is to use the HTML5 track element to specify a deions timed text track for a video element. Audio deion timed text tracks contain textual deions of the video component of the media resource, intended for audio synthesis when the visual component is obscured, unavailable, or not usable. The user agent makes the cues available to the user in a non-visual fashion, for instance, by synthesizing them into speech.

    - Page does not contain video elements.
      - https://www.2bella.com/shipping-policy

- Criterion 1.2.2 [Captions (Prerecorded)]

  The intent of this Success Criterion is to enable people who are deaf or hard of hearing to watch synchronized media presentations. Captions provide the part of the content available via the audio track. Captions not only include dialogue, but identify who is speaking and include non-speech information conveyed through sound, including meaningful sound effects.

  - G87 Provide closed captions

    The objective of this technique is to provide a way for people who have hearing impairments or otherwise have trouble hearing the dialog in synchronized media material to be able to view the material and see the dialog and sounds - without requiring people who are not deaf to watch the captions. With this technique all of the dialog and important sounds are embedded as text in a fashion that causes the text not to be visible unless the user requests it. As a result they are visible only when needed. This requires special support for captioning in the user agent.

    - No videos on page
      - https://www.2bella.com/shipping-policy

  - H95 Using the track element to provide captions

    The objective of this technique is to use the HTML5 track element to specify a captions timed text track for a video element. Caption timed text tracks contain tranion or translation of the dialogue, sound effects, relevant

musical cues, and other relevant audio information, suitable for when sound is unavailable or not clearly
audible.

- **Page does not contain video elements.**
  - https://www.2bella.com/shipping-policy

## Criterion 1.2.3 [Audio Description or Full Text Alternative]

The intent of this Success Criterion is to provide people who are blind or visually impaired access to the visual
information in a synchronized media presentation. This Success Criterion describes two approaches, either of which
can be used.

- **G69 Provide a full synchronized media text alternative including any interaction**

  The purpose of this technique is to provide an accessible alternative way of presenting the information in a
  synchronized media presentation.

  - **No videos on page**
    - https://www.2bella.com/shipping-policy

- **G78 Provide a sound track that includes audio description**

  The objective of this technique is to provide an audio (spoken) version of information that is provided visually
  so that it is possible for people who cannot see to be able to understand audio-visual material better.

  - **No videos on page**
    - https://www.2bella.com/shipping-policy

- **G8 Create an extended audio description for the synchronized media content**

  The objective of this technique is to all additional audio deion to be inserted into a synchronized media
  presentation when there is not enough time in the gaps int the dialog. This is done by simply freezing the
  image so that additional audio deion of the video can be played. When the deion is finished, the synchronized
  media continues.

  - **Page does not contain video**
    - https://www.2bella.com/shipping-policy

- **H53 Use the body of the object element**

  The objective of this technique is to provide a text alternative for content rendered using the object element.
  The body of the object element can be used to provide a complete text alternative for the object or may contain
  additional non-text content with text alternatives.

  - **Page does not have OBJECT elements.**
    - https://www.2bella.com/shipping-policy

## Criterion 1.4.2 [Audio Control]

Individuals who use screen reading software can find it hard to hear the speech output if there is other audio playing
at the same time. This difficulty is exacerbated when the screen reader's speech output is software based (as most
are today) and is controlled via the same volume control as the sound. Therefore, it is important that the user be
able to turn off the background sound. Note: Having control of the volume includes being able to reduce its volume
to zero.

- **G60 Ensure all autostart sounds turns off automatically within three seconds**

  The purpose of this technique is to allow authors to play a sound on their Web page but avoid the problem of
  users not being able to use their screen readers due to interference by the content sound. It also allows the
  author to avoid putting controls on the Web page to control the sound - and the problem faced by users with
  screen readers in finding the control (when unable to hear their screen reader).

  - **No audio on page**
    - https://www.2bella.com/shipping-policy

## Criterion 2.1.2 [No Keyboard Trap]

The intent of this Success Criterion is to ensure that that content does not "trap" keyboard focus within subsections
of content on a Web page. This is a common problem when multiple formats are combined within a page and
rendered using plug-ins or embedded applications.

- **F10 Failure of Success Criterion 2.1.2 and Conformance Requirement 5 due to combi...**

  When content includes multiple formats, one or more user agents or plug-ins are often needed in order to
  successfully present the content to users. For example, a page that includes XHTML, SVG, SMIL and XForms
  may require a browser to load as many as three different plug-ins in order for a user to successfully interact
  with the content. Some plug-ins create a common situation in which the keyboard focus can become "stuck" in
  a plug-in, leaving a keyboard-only user with no way to return to the other content.

  - **Page does not contain keyboard handlers**
    - https://www.2bella.com/shipping-policy

## Criterion 2.2.1 [Timing Adjustable]

The intent of this Success Criterion is to ensure that users with disabilities are given adequate time to interact with
Web content whenever possible. People with disabilities such as blindness, low vision, dexterity impairments, and
cognitive limitations may require more time to read content or to perform functions such as filling out on-line forms.
If Web functions are time-dependent, it will be difficult for some users to perform the required action before a time
limit occurs. This may render the service inaccessible to them. Designing functions that are not time-dependent will
help people with disabilities succeed at completing these functions. Providing options to disable time limits,
customize the length of time limits, or request more time before a time limit occurs helps those users who require
more time than expected to successfully complete tasks. These options are listed in the order that will be most
helpful for the user. Disabling time limits is better than customizing the length of time limits, which is better than
requesting more time before a time limit occurs.

- **SCR1 Allow the user to extend the default time limit**

  The objective of this technique is to allow user to extend the default time limit by providing a mechanism to
  extend the time when s provide functionality that has default time limits. In order to allow the user to request a
  longer than default time limit, the can provide a form (for example) allowing the user to enter a larger default
  time limit. Making this available as a preference setting allows users to indicate their requirements in advance.
  If warning the user a time limit is about to expire (see SCR16: Providing a that warns the user a time limit is
  about to expire (Scripting) ), this form can be made available from the warning dialog.

  - **Page does not contain timeouts**
    - https://www.2bella.com/shipping-policy

## Criterion 2.2.2 [Pause, Stop, Hide]

The intent of this Success Criterion is to avoid distracting users during their interaction with a Web page.

- **F4 Failure of Success Criterion 2.2.2 due to using text-decoration:blink without...**

  CSS defines the blink value for the text-decoration property. When used, it causes any text in elements with
  this property to blink at a predetermined rate. This cannot be interrupted by the user, nor can it be disabled as

a user agent preference. The blinking continues as long as the page is displayed. Therefore, content that uses text-decoration:blink fails the Success Criterion because blinking can continue for more than three seconds.

- No usages of text-decoration:blink found on page
  - https://www.2bella.com/shipping-policy

## Criterion 3.2.1 [On Focus]

The intent of this Success Criterion is to ensure that functionality is predictable as visitors navigate their way through a Any component that is able to trigger an event when it receives focus must not change the context. Examples of changing context when a component receives focus include, but are not limited to:

- G107 Use "activate" rather than "focus" as a trigger for changes of context

  The objective of this technique is to provide a method for activating things that is predictable by the user. Users with cognitive disabilities and people using screen readers or screen magnifiers may be confused by an unexpected event such as automatic form submission or activation of a function that causes a change of context.

  - Page does not use focus to activate content
    - https://www.2bella.com/shipping-policy

## Criterion 3.2.2 [On Input]

The intent of this Success Criterion is to ensure that entering data or selecting from a control has predictable effects. Changes in context can confuse users who do not easily perceive the change or are easily distracted by changes. Changes of context are appropriate only when it is clear that such a change will happen when a field is selected or a button is pressed.

- H32 Provide submit buttons

  The objective of this technique is to provide a mechanism that allows users to explicitly request changes of context. The intended use of a submit button is to generate an HTTP request that submits data entered in a form, so it is an appropriate control to use for causing a change of context.

  - No forms on page
    - https://www.2bella.com/shipping-policy
- H84 Use a button with a select element to perform an action

  The objective of this technique is to allow the user to control when an action is performed, rather than having the action occur as a side effect of choosing a value for the select element. The user may inspect the different values of the select element, or may accidentally choose the wrong value, without causing the action to occur. When the user is satisfied with their choice, they select the button to perform the action.

  - No SELECT elements on page.
    - https://www.2bella.com/shipping-policy

## Criterion 3.3.1 [Error Identification]

The intent of this Success Criterion is to ensure that users are aware that an error has occurred and can determine what is wrong. The error message should be as specific as possible. In the case of an unsuccessful form submission, re-displaying the form and indicating the fields in error is insufficient for some users to perceive that an error has occurred. Screen reader users, for example, will not know there was an error until they encounter one of the indicators. They may abandon the form altogether before encountering the error indicator, thinking that the page simply is not functional.

- G83 Provide text descriptions to identify required fields that were not completed

  The objective of this technique is to notify the user when a field that must be completed has not been completed. When users fail to provide input for any mandatory form fields, information is provided in text to enable the users to identify which fields were omitted. One approach is to use client-side validation and provide an dialog box identifying the mandatory fields which were omitted. Another approach, using server-side validation, is to re-display the form (including any previously entered data), with either a text deion at the location of the omitted mandatory field, or a text deion that identifies the omitted mandatory fields.

  - No forms on page
    - https://www.2bella.com/shipping-policy
- SCR18 Provide client-side validation and alert

  The objective of this technique is to validate user input as values are entered for each field, by means of client-side ing. If errors are found, an dialog describes the nature of the error in text. Once the user dismisses the dialog, it is helpful if the positions the keyboard focus on the field where the error occurred.

  - No inputs on page
    - https://www.2bella.com/shipping-policy

## Criterion 3.3.2 [Labels or Instructions]

The intent of this Success Criterion is to help users avoid making mistakes when their input is required. To help avoid mistakes it is good user interface design to provide simple instructions and cues for entering information. Some users with disabilities may be more likely to make mistakes than users without disabilities or recovery from mistakes may be more difficult, making mistake avoidance an important strategy for users with disabilities. People with disabilities rely on well documented forms and procedures to interact with a page. Blind users need to know exactly what information should be entered into form fields and what the available choices are. Simple instructions visually connected to form controls can assist users with cognitive disabilities or those accessing a page using a screen magnifier.

- G89 Provide expected data format and example

  The objective of this technique is to help the user avoid input errors by informing them about restrictions on the format of data that they must enter. This can be done by describing characteristics of the format or providing a sample of the format the data should have.

  - No INPUT fields of type text on page
    - https://www.2bella.com/shipping-policy
- H44 Use label elements to associate text labels with form controls

  The objective of this technique is to use the label element to explicitly associate a form control with a label. A label is attached to a specific form control through the use of the for attribute. The value of the for attribute must be the same as the value of the id attribute of the form control.

  - No LABEL 'FOR' attribute found on page.
    - https://www.2bella.com/shipping-policy
- H65 Use the title attribute to identify form controls when the label element …

  The objective of this technique is to use the title attribute to label form controls when the visual design cannot accommodate the label (for example, if there is no text on the screen that can be identified as a label) or where it might be confusing to display a label. User agents, including assistive technology, can speak the title attribute.

- No controls found that require labels
    - https://www.2bella.com/shipping-policy
- Compliance Level AA

The next level of conformance to the WCAG 2.0 guidelines. To declare AA conformance with WCAG 2.0 all criteria in Level A must also be met.

- Criterion 1.4.3 [Contrast (Minimum)]

The intent of this Success Criterion is to provide enough contrast between text and its background so that it can be read by people with moderately low vision (who do not use contrast-enhancing assistive technology). For people without color deficiencies, hue and saturation have minimal or no effect on legibility as assessed by reading performance (Knoblauch et al., 1991). Color deficiencies can affect luminance contrast somewhat. Therefore, in the recommendation, the contrast is calculated in such a way that color is not a key factor so that people who have a color vision deficit will also have adequate contrast between the text and the background.

- F24 Failure of Success Criterion 1.4.3, 1.4.6 and 1.4.8 due to specifying foregro...

Users with vision loss or cognitive challenges often require specific foreground (text) and background color combinations. For instance, many people with low vision find it much easier to see a Web page that has white text on a black background, so they may have set their user agent to create this contrast. If the author specifies that the text must be black, then it may override the settings of the user agent and render a page that has black text (specified by the author) on black background (that was set in the user agent). This principle also works in reverse. If the Webmaster forces the background to be white, then the white background specified by the author would be the same color as the white text (which was set in the user agent) rendering the page unusable to the user. Therefore, if the author specifies a foreground (text) color then they should also specify a background color which has sufficient contrast (link) with the foreground and vice versa.

- Content specifies foreground (text) color but does not specify background color
    - https://www.2bella.com/shipping-policy
        - Line 2352, column 191, h1 element
        - Line 2352, column 253, span element
        - Line 2352, column 276, span element
        - Line 2352, column 306, span element
        - Line 2411, column 1080, p element
        - Line 2411, column 1739, p element
        - Line 2411, column 2356, p element
        - Line 2411, column 3015, p element
        - Line 2411, column 3667, p element
        - Line 2411, column 4242, p element
        - Line 2460, column 451, p element
        - Line 2462, column 1, p element
        - Line 2462, column 63, span element
        - Line 2462, column 95, span element
        - Line 2462, column 132, span element
        - Line 2462, column 190, span element
        - Line 2462, column 220, span element
        - Line 2464, column 1, p element
        - Line 2464, column 63, span element
        - Line 2464, column 95, span element
        - Line 2464, column 132, span element
        - Line 2464, column 190, span element
        - Line 2464, column 220, span element
        - Line 2464, column 249, span element
        - Line 2466, column 1, p element
        - Line 2466, column 43, span element
        - Line 2466, column 73, span element
        - Line 2466, column 102, span element
        - Line 2466, column 134, span element
        - Line 2466, column 175, span element
        - Line 2468, column 1, p element
        - Line 2470, column 1, p element
        - Line 2470, column 19, span element
        - Line 2472, column 1, p element
        - Line 2474, column 1, p element
        - Line 2474, column 43, span element
        - Line 2474, column 75, span element
        - Line 2474, column 105, span element
        - Line 2474, column 128, span element
        - Line 2474, column 169, span element
        - Line 2476, column 1, p element
        - Line 2478, column 1, p element
        - Line 2478, column 19, span element
        - Line 2480, column 1, p element
        - Line 2480, column 19, span element
        - Line 2482, column 1, p element
        - Line 2482, column 43, span element
        - Line 2482, column 73, span element
        - Line 2482, column 114, span element
        - Line 2482, column 146, span element
        - (111 more)
- Element specifies background color but not specify foreground (text) color
    - https://www.2bella.com/shipping-policy
        - Line 2326, column 465, div element
        - Line 2326, column 675, div element
        - Line 2326, column 866, div element
        - Line 2326, column 945, div element
        - Line 2340, column 340, div element
        - Line 2340, column 564, div element
        - Line 2387, column 1625, div element
        - Line 2387, column 1767, div element
        - Line 2411, column 4596, ul element
        - Line 2448, column 956, div element
        - Line 2552, column 1631, div element
        - Line 2552, column 1773, div element

- Line 2607, column 470, div element
- Line 2607, column 713, div element
- Line 2651, column 1542, div element
- Line 2651, column 1684, div element
- G18 Ensuring that a contrast ratio of at least 4.5:1 exists between text (and ima...

The objective of this technique is to make sure that users can read text that is presented over a background. For Success Criterion 1.4.3, this technique describes the minimum contrast ratio for text that is less than 18 point (if not bold) and less than 14 point (if bold). For Success Criterion 1.4.5, this technique relaxes the 7:1 contrast ratio requirement for text that is at least 18 point (if not bold) or at least 14 point (if bold). If the background is a solid color (or all black or all white) then the relative luminance of the text can be maintained by making sure that each of the text letters have a 4.5:1 contrast ratio with the background. If the background or the letters vary in relative luminance (or are patterned) then the background around the letters can be chosen or shaded so that the letters maintain a 4.5:1 contrast ratio with the background behind them even if they do not have that contrast ratio with the entire background. The contrast ratio can sometimes be maintained by changing the relative luminance of the letters as the relative luminance of the background changes across the page. Another method is to provide a halo around the text that provides the necessary contrast ratio if the background image or color would not normally be sufficiently different in relative luminance.

- Content has invalid contrast ratio (color: #8b8a8a, background: #ffffff)
  - https://www.2bella.com/shipping-policy
    - Line 2672, column 469, span element
    - Line 2694, column 319, span element
- Content has invalid contrast ratio (color: #ffffff, background: #ffffff)
  - https://www.2bella.com/shipping-policy
    - Line 2352, column 306, span element
    - Line 2716, column 462, span element
    - Line 2738, column 422, span element
    - Line 2760, column 419, span element
    - Line 2782, column 423, span element
    - Line 2804, column 344, span element
    - Line 2831, column 477, span element
- G145 Ensure that a contrast ratio of at least 3:1 exists between text (and images ...

The objective of this technique is to make sure that users can read text that is presented over a background. This technique relaxes the 5:1 contrast ratio requirement for text that is at least 18 point (if not bold) or at least 14 point (if bold).

- Use inspection tools to verify that contrast ratio is valid
  - https://www.2bella.com/shipping-policy
- Criterion 1.4.4 [Resize text]

The intent of this Success Criterion is to ensure that visually rendered text, including text-based controls (text characters that have been displayed so that they can be seen [vs. text characters that are still in data form such as ASCII]) can be scaled successfully so that it can be read directly by people with mild visual disabilities, without requiring the use of assistive technology such as a screen magnifier. Users may benefit from scaling all content on the Web page, but text is most critical.

- C12 Use percent, em, or named font size for font sizes

The objective of this technique is to specify text font size proportionally so that user agents can scale content effectively. If a font-size is specified for the body element, all other elements inherit that value, unless overridden by a more specific selector.

- This checkpoint failed due to the use of pt/px to specify font size; %, em should be used instead.
  - https://www.2bella.com/shipping-policy
    - Line 167, column 5, SCRIPT element
    - Line 184, column 101, style element
    - Line 195, column 9, style element
    - Line 267, column 9, STYLE element
    - Line 861, column 9, style element
    - Line 2326, column 1113, style element
    - Line 2328, column 291, style element
    - Line 2340, column 685, style element
    - Line 2352, column 306, style element
    - Line 2352, column 433, style element
    - Line 2374, column 1465, style element
    - Line 2387, column 2170, style element
    - Line 2407, column 494, style element
    - Line 2411, column 1080, p element
    - Line 2411, column 1739, p element
    - Line 2411, column 2356, p element
    - Line 2411, column 3015, p element
    - Line 2411, column 3667, p element
    - Line 2411, column 4242, p element
    - Line 2411, column 4711, style element
    - Line 2423, column 1721, style element
    - Line 2436, column 220, style element
    - Line 2436, column 474, style element
    - Line 2436, column 624, style element
    - Line 2436, column 842, style element
    - Line 2440, column 205, style element
    - Line 2448, column 1103, style element
    - Line 2460, column 451, p element
    - Line 2462, column 220, span element
    - Line 2464, column 249, span element
    - Line 2466, column 175, span element
    - Line 2468, column 1, p element
    - Line 2470, column 19, span element
    - Line 2472, column 1, p element
    - Line 2474, column 169, span element
    - Line 2476, column 1, p element
    - Line 2478, column 19, span element
    - Line 2480, column 19, span element
    - Line 2482, column 146, span element

- Line 2484, column 1, p element
- Line 2486, column 19, span element
- Line 2488, column 1, p element
- Line 2492, column 20, span element
- Line 2495, column 20, span element
- Line 2499, column 1, p element
- Line 2501, column 19, span element
- Line 2503, column 1, p element
- Line 2505, column 146, span element
- Line 2507, column 1, p element
- Line 2509, column 19, span element
- (50 more)

- C17 Scaling form elements which contain text

  The objective of this technique is to ensure text-based form controls resize when text size is changed in the user agent. This will allow users to enter text and read what they have entered in input boxes because the text is displayed at the size required by the user. Text-based form controls include input boxes (text and textarea) as well as buttons.

  - No input elements on page
    - https://www.2bella.com/shipping-policy

- Criterion 1.4.5 [Images of Text]

  The intent of this Success Criterion is to encourage authors who are using technologies that are capable of achieving a specific visual presentation to enable people who require a particular visual presentation of text to be able to adjust the text presentation as required. This includes people who require the text in a particular font size, foreground and background color, font family, line spacing or alignment.

  - H52 Ensure images are not used instead of text except for specific cases

    If the technologies being used can achieve the visual presentation, text is used to convey information rather than images of text

    - Verify if any images are text. If so evaluate whether content should be exposed as text instead.
      - https://www.2bella.com/shipping-policy

  - C30 Using CSS to replace text with images of text and providing user interface co...

    The objective of this technique is to demonstrate how CSS can be used to replace structured HTML text with images of text that makes it possible for users to view content according to their preferences. To use this technique, an author starts by creating an HTML page that uses semantic elements to mark up the structure of the page. The author then designs two or more stylesheets for that page. One stylesheet presents the HTML text as text and the second uses CSS features to replace some of the HTML text with images of text. Finally, through the use of server-side or client-side ing, the author provides a control that allows the user to switch between the available views.

    - Page does not use CSS background images
      - https://www.2bella.com/shipping-policy

- Criterion 2.4.6 [Headings and Labels]

  The intent of this Success Criterion is to help users understand what information is contained in Web pages and how that information is organized. When headings are clear and deive, users can find the information they seek more easily, and they can understand the relationships between different parts of the content more easily. Deive labels help users identify specific components within the content.

  - G130 Provide descriptive headings

    The objective of this technique is to make section headings within Web content deive. Deive headings and titles (see G88: Providing deive titles for Web pages) work together to give users an overview of the content and its organization. Deive headings identify sections of the content in relation both to the Web page as a whole and to other sections of the same Web page.

    - Verify header identifies its section of content
      - https://www.2bella.com/shipping-policy
        - Line 2352, column 191, h1 element
        - Line 2560, column 151, h2 element
        - Line 2672, column 329, h1 element
        - Line 2694, column 179, h1 element
        - Line 2716, column 217, h1 element
        - Line 2738, column 179, h1 element
        - Line 2760, column 178, h1 element
        - Line 2782, column 178, h1 element
        - Line 2804, column 179, h1 element
        - Line 2831, column 234, h1 element
        - Line 2853, column 178, h1 element

- Criterion 2.4.7 [Focus Visible]

  The intent of this Success Criterion is to ensure that there is at least one mode of operation where the keyboard focus indicator can be visually located.

  - G149 Using user interface components that are highlighted by the user agent when t...

    The objective of this technique is to ensure that the focused component can be visually identified by the user by relying on user agent support. It is common for user agents to highlight standard controls in some way when they receive focus. UAAG-conformant user agents do so when they satisfy checkpoint 10.2 "Highlight selection, content focus, enabled elements, visited links". When authors use standard controls for which the user agent provides this support, users are informed of the focus location in a standard, predictable way.

    - Set focus to all interactive elements on this page and verify that focus can be discerned visually
      - https://www.2bella.com/shipping-policy

- Criterion 3.1.2 [Language of Parts]

  The intent of this Success Criterion is to ensure that user agents can correctly present content written in multiple languages and so that assistive technologies that helps users understand text use appropriate language-specific knowledge and resources.. This applies to graphical browsers as well as screen readers, braille displays, and other voice browsers.

  - H58 Use language attributes to identify changes in the human language

    The objective of this technique is to clearly identify any changes in language on a page by using the lang or xml:lang attribute, as appropriate for the HTML or XHTML version you use.

    - If language can change on webpage ensure areas of content are marked up.
      - https://www.2bella.com/shipping-policy

○ Criterion 3.2.3 [Consistent Navigation]

The intent of this Success Criterion is to encourage the use of consistent presentation and layout for users who interact with repeated content within a set of Web pages and need to locate specific information or functionality more than once. Individuals with low vision who use screen magnification to display a small portion of the screen at a time often use visual cues and page boundaries to quickly locate repeated content. Presenting repeated content in the same order is also important for visual users who use spatial memory or visual cues within the design to locate repeated content.

- F66 Failure of Success Criterion 3.2.3 due to presenting navigation links in a di...

  This describes a failure condition for all techniques involving navigation mechanisms that are repeated on multiple Web pages within a set of Web pages (Success Criterion 3.2.3). If the mechanism presents the order of links in a different order on two or more pages, then the failure is triggered.

  - Verify that the page is consistent in the presentation of site navigation, position on page, link colours etc. between all pages on site
    - https://www.2bella.com/shipping-policy

○ Criterion 3.2.4 [Consistent Identification]

The intent of this Success Criterion is to ensure consistent identification of functional components that appear repeatedly within a set of Web pages. A strategy that people who use screen readers use when operating a Web site is to rely heavily on their familiarity with functions that may appear on different Web pages. If identical functions have different labels on different Web pages, the site will be considerably more difficult to use. It may also be confusing and increase the cognitive load for people with cognitive limitations. Therefore, consistent labeling will help.

- G197 Using labels, names, and text alternatives consistently for content that has ...

  The purpose of this technique is to help for users with cognitive disabilities, blindness and vision loss to understand what will happen when they interact with a function on a Web page. If there are different labels on user interface components (i.e., elements, links, JavaScript objects, etc.) that have the same function, the user will not know that they have encountered a component with the same function and will not know what to expect. This could lead to many unnecessary errors. It is also recommended that this approach to consistent labelling be applied across the Web site.

  - Ensure functionality is referred to with identical text alternatives on each page
    - https://www.2bella.com/shipping-policy

○ Criterion 1.2.4 [Captions (Live)]

The intent of this Success Criterion is to enable people who are deaf or hard of hearing to watch *real-time* presentations. Captions provide the part of the content available via the audio track. Captions not only include dialogue, but also identify who is speaking and notate sound effects and other significant audio.

- G9 Create captions for live synchronized media

  The objective of this technique is to allow users who cannot hear to be able to access real-time synchronized media broadcasts. It is more difficult to create accurate real-time captions because there is little time to correct mistakes or to listen a second time or consult someone to be sure the words are accurately reproduced. It is also harder to simplify or paraphrase information if it is flowing too quickly.

  - No videos on page
    - https://www.2bella.com/shipping-policy

○ Criterion 1.2.5 [Audio Description]

The intent of this Success Criterion is to provide people who are blind or visually impaired access to the visual information in a synchronized media presentation. The audio deion augments the audio portion of the presentation with the information needed when the video portion is not available. During existing pauses in dialogue, audio deion provides information about actions, characters, scene changes, and on-screen text that are important and are not described or spoken in the main sound track.

- G78 Provide a sound track that includes audio description

  The objective of this technique is to provide an audio (spoken) version of information that is provided visually so that it is possible for people who cannot see to be able to understand audio-visual material better.

  - No videos on page
    - https://www.2bella.com/shipping-policy

- G8 Create an extended audio description for the synchronized media content

  The objective of this technique is to all additional audio deion to be inserted into a synchronized media presentation when there is not enough time in the gaps iint the dialog. This is done by simply freezing the image so that additional audio deion of the video can be played. When the deion is finished, the synchronized media continues.

  - Page does not contain video
    - https://www.2bella.com/shipping-policy

○ Criterion 2.4.5 [Multiple Ways]

The intent of this Success Criterion is to make it possible for users to locate content in a manner that best meets their needs. Users may find one technique easier or more comprehensible to use than another.

- H59 Use the link element and navigation tools

  The objective of this technique is to describe how the link element can provide metadata about the position of an HTML page within a set of Web pages or can assist in locating content with a set of Web pages. The value of the rel attributes indicates what type of relation is being described, and the href attribute provides a link to the document having that relation. Multiple link elements can provide multiple relationships. Several values of rel are useful:

  - Link is not used for document navigation
    - https://www.2bella.com/shipping-policy

○ Criterion 3.3.3 [Error Suggestion]

The intent of this Success Criterion is to ensure that users receive appropriate suggestions for correction of an input error if it is possible.

- SCR18 Provide client-side validation and alert

  The objective of this technique is to validate user input as values are entered for each field, by means of client-side ing. If errors are found, an dialog describes the nature of the error in text. Once the user dismisses the dialog, it is helpful if the positions the keyboard focus on the field where the error occurred.

  - No inputs on page
    - https://www.2bella.com/shipping-policy

○ Criterion 3.3.4 [Error Prevention (Legal, Financial, Data)]

The intent of this Success Criterion is to help users with disabilities avoid serious consequences as the result of a mistake when performing an action that cannot be reversed. For example, purchasing non-refundable airline tickets or submitting an order to purchase stock in a brokerage account are financial transactions with serious consequences. If a user has made a mistake on the date of air travel, he or she could end up with a ticket for the wrong day that cannot be exchanged. If the user made a mistake on the number of stock shares to be purchased, he or she could end up purchasing more stock than intended. Both of these types of mistakes involve transactions that take place immediately and cannot be altered afterwards, and can be very costly. Likewise, it may be an unrecoverable error if users unintentionally modify or delete data stored in a database that they later need to access, such as their travel profile in a travel services Web site. Test data is included in this provision because, in order for tests to be valid, users are not allowed to modify their answers once submitted; so users need to be able to ensure that their submission is correct.

- G98 Provide the ability for the user to review and correct answers before submitting

  The objective of this technique is to provide users with a way to ensure their input is correct before completing an irreversible transaction. Testing, financial, and legal applications permit transactions to occur which cannot be "undone". It is therefore important that there be no errors in the data submission, as the user will not have the opportunity to correct the error once the transaction has been committed.

  - No forms on page
    - https://www.2bella.com/shipping-policy
- SCR18 Provide client-side validation and alert

  The objective of this technique is to validate user input as values are entered for each field, by means of client-side ing. If errors are found, an dialog describes the nature of the error in text. Once the user dismisses the dialog, it is helpful if the positions the keyboard focus on the field where the error occurred.

  - No inputs on page
    - https://www.2bella.com/shipping-policy

Total




PRIORITY
★ MAIL ★

EXPECTED DELIVERY DAY: 08/27/2018

USPS TRACKING NUMBER

9505 5110 0907 8235 1654 00

DATE OF DELIVERY SPECIFIED*

USPS TRACKING™ INCLUDED*

INSURANCE INCLUDED*

PICKUP AVAILABLE
* Domestic only

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION,
LABEL MAY BE REQUIRED.

CLERK, U.S. DISTRICT COURT
AUG 27 2018
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION BY DEPUTY

PRIORITY
★ MAIL ★

UNITED STATES
POSTAL SERVICE®
VISIT US AT USPS.COM®

FROM: Jose Velez
3936 S. Semoran Blvd.
#317 Orlando FL 32822
Re: 2 Bella

TO: US Court House
Clerk's Office
411 West 4th St.
Room 1053
Santa Ana, CA 92701-4516

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

UNITED STATES
POSTAL SERVICE.

FOR DOMESTIC AND INTERNATIONAL USE

Label 228, March 2016

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14F © U.S. Postal Service; July 2013; All rights reserved.

This envelope is made from post-consumer waste. Please recycle - again.

**Velez v. 2Bella, Inc.**

Received: ↰ **Friday, July 20, 2018 6:40 PM**

From: **mariam.saqebi@aclawfirm.net**

To: **jvelez2@protonmail.com**

**EXHIBIT II**

Mr. Velez,

Our firm has been retained to represent 2Bella in the above matter.

According to the court's docket, my client's answer is due this Monday.  We are requesting a 30 day extension, to give us time to reach a possible settlement.  Therefore, if you are agreeable, I will draft stip for extension for your review and file on or before Monday, so we don't miss the deadline.

Our clients are in the process of fixing the alleged violations, in the meanwhile, to put this lawsuit behind us, please give us your settlement demand.

Please let me know if you would like to discuss this further.

Thanks.

*Mariam Alami Saqebi, Esq.*
**Law Offices of Albert Chang**
1225 W 190th Street, Suite 420
Gardena, CA 90248
T: (310) 769-6836
F: (310) 769-6787
E: Mariam.saqebi@aclawfirm.net

NOTICE: If you have received an e-mail from Law Offices of Albert Chang, the e-mail message and all attachments transmitted with it are intended solely for the use of the addressee and may contain legally privileged and confidential information. If the reader of the message is not the intended recipient, or an employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, copying, or other use of the message or its attachments is strictly prohibited. If you have received a message in error, please notify the sender immediately by replying to the message and please delete it from your computer.